States v. Todd Robinson Good morning, Your Honors. May it please the Court, Joshua P. Cohn, C-O-H-N, C-J-A Council, on behalf of Todd Robinson. If it please the Court, I would like to reserve four minutes for rebuttal. Thank you very much, Your Honor. May it please the Court, it seems to me that the heart of this appeal lies in the existence of Defendant P, who resides in Example 6 of the application notes to 1B.1.3 of the Sentencing Guidelines, and whose existence I must apologize I did not bring to the attention of the District Court at the time of sentencing. So we have a plain error situation here. Well, I would submit to the Court that's correct, and I would submit that there actually is, although unpublished, certainly there is precedent in this circuit. The Knighton case, which I pointed out in footnote 5 of my reply brief, which I believe Judge Ambrose was on the panel that cited it, said that the application notes are certainly persuasive, and with regard to... That may be persuasive, but if they're not called to the attention of the Court, how can we say a court plainly errors when not... I mean, it's not a statute, it's an application note. Yeah, and I'm not... Even if it were brought to the Court's attention, application note 6 cuts both ways, it seems like. It says, Defendant P is a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and the other dealer share a common source of supply. And that's sort of... You're saying... You're analogizing this to the relationship that Robinson had with Jeffries and others had with Jeffries. But otherwise, operate independently. Defendant P is not accountable for the quantity of drugs sold by the other street-level drug dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, another street-level drug dealer, pulls his resources and profits with others. Now, obviously, that helps you to some extent. But here, you've got this person, Robinson, shown on camera as being with Lynn, and they all both know they're doing the same thing. May it please the Court, Your Honor, with regard to that fact, of course, the Court did receive, I assume, the supplemental appendix. So, I certainly acknowledge that it's a more troubling situation if, as was posited incorrectly and certainly by accident because the record below was originally transcribed incorrectly, that Mr. Robinson and Mr. Lynn were assisting each other at the counter. That's one thing. But I would submit to the Court that what we really have here is a situation where the several check cashers all were operating independently at Mr. Jeffries' behest. And what happened was, and just the nature of the offense, was that Mr. Jeffries would provide the stolen checks. And the defendant, Mr. Robinson, certainly knew the checks were stolen. He doesn't gainsay that. But Mr. Jeffries would then provide each of the various minions, if you will, with a stolen check and an identification in the name of the stolen check. And ironically, if you go back and look, I think they're sort of Eastern Slavic names or something, so they would raise, I think, suspicion at the counter. But we know that Lynn and Robinson knew each other. That's correct. And we know that they were in the store at the same time. That's correct. And Robinson knew what Lynn was up to. I agree with all three of those points, Your Honor. Doesn't that support an inference that they are not totally independent of each other in this activity? Your Honor, I would disagree with that because I think it doesn't support the inference in this case. Inference sufficiently for sentencing enhancement, too. We're not talking about conspiracy conviction here. I understand that. And certainly I acknowledge that the Kemp case that I cited originally was a conviction case. But it was, and I was, I understood the visceral nature of the argument and picked it up more clearly on the appeal. But I would submit. And the judge didn't say, oh, well, Robinson knew everything. He just looked at Lynn's conduct. And that's where I go back to defendant P from the sentencing guidelines, Your Honor, because thankfully Mr. P, he also knows of the other street corner drug dealers. He also knows what they're doing and he knows their source of supply. But they're selling independently, aren't they? Oh, and I would submit to you that in this case, Mr. Robinson and Mr. Lynn are cashing checks independently because there's nothing that Mr. Lynn can do. Supposing that in that note example that Judge Ambrose read, supposing that the dealers were, that Jeffress was a supplier and supplied Jefferson, I'm sorry, supplied Robinson and supplied Lynn with drugs on consignment and said to them, look, sell these drugs at, that's my street corner over there. Go over there and sell my drugs. When you sell the drugs, let's say $100 a piece, bring the money back and I'll give you, I'll give you your percentage. I'll give you 25%. Now Lynn and Robinson know that they're selling for Jeffress at the same street corner. Why isn't that a conspiracy sufficient for, for the increase of the sentence in this case? And I would submit to the court that the reason that is not a sufficient interdeployment, if you will, is because there isn't that concept of the interdependence of the activity of the street dealer. There is, there is. They're both bringing their money back to Jeffress. Oh, but Your Honor. And they're sharing and they know of each other's activity and they're getting money back from Jeffress. You know, you say interdependence, but the What if the application note had them in the same location at the same time engaging in the same criminal activity? That's not in the application note. Could it therefore be said that that supports an inference that they are not operating independently? I understand the question. I think the answer is unfortunately there isn't an application note that really deals with this particular circumstance. But wouldn't that support an inference that they were not operating independently? It might support the inference, Your Honor. I understand the question, but I still submit to the court that in this case, one would also then have to look to the nature of the offense. Because again, the nature of this particular offense is such that it really, there's nothing about taking, because what each of these defendants did was they took a fake, a picture to Mr. Jeffress who made the ID for them. So they knew what they were doing. And then Jeffress would give them back a check and an ID in the name of the person with the check. Then that Mr. Robinson in this case. Jeffress also drove them to the location where they were cashing. At times I think that's correct. They were in the same car. They got out of the same car. They walked into the same check cashing facility. They both knew of each other's presence. They both went back out, got in the car together, and drove away. May I please report? I don't know that the record actually says that they were in the same car later, but I'll leave an acknowledge there. If they know and they're doing it and then they walk out and they're comparing notes as to how much money they have. I mean, we're talking about inferences here, but inferences are okay for purposes of sentencing enhancement. Are they not? Yes, Your Honor. I will certainly acknowledge that there's a legal matter. Inferences are okay, but I would submit that the application of this note in this case, because again, if I might, just going back to the particular offense and not, we have to go away from the drug offense now and actually looking at this particular offense, there's nothing that Mr. Lynn can do to help Mr. Robinson actually cash that check. Because Mr. In connection with that is, if you can show that Robinson only profited from what he, Robinson, brought in, he did not share any of the profits from Lynn nor Lynn from him. Your Honor, that's an economic, I think that's part of the analysis and it's true in this case. But I actually have to confess, I think there may be circumstances where you might get, you might get, you might get individuals that were perhaps not directly profiting, but were assisting the entire conspiracy, if you will. And that's what got the definition of the difference between perhaps a web conspiracy or a straight line conspiracy versus the hub and spoke, where each of the spokes, because are not really involved. And if we'd look at the other application guidelines, there are other examples actually up in the alphabet. I don't, forgive me for not knowing exactly which ones they are, but right around note six, there are other applications showing, I think there's a girlfriend of a drug dealer who does one drug run, but not the others. So in, to Your Honor's that's where the guidelines suggest, that's where the accountability should take place. And if it pleases the court, I see my time is running relatively short. Yes, Your Honor. I want to ask a question. Paragraph 28 of the pre-sentence report for Todd Robinson says that during the course of the investigation, agents learned that Jod, Jeffries, Todd Robinson, Travis Lynn, Glenda Blackmon, Richard Davis conspired with each other to steal and negotiate at least 27 checks. Did, was there objection to that provision in the pre-sentence report? That's a fair question. The answer is there was not, Your Honor. And I guess it was the way I read it. I really read that, and that's a real, I guess a technical parsing of it, but I read that Mr. Robinson conspired with Mr. Jeffries. To the extent I didn't object to that, that was certainly an error. But if I might bring one other issue to the court's attention, notwithstanding this issue of the guidelines, I would submit to the court that with regard to Mr. Robinson, at least the application of the victim enhancement ought to be remanded back independent because of the fact that Mr. Davis, who was equally involved, if the court will, he did not get that application. And the government might say, well, he was less involved. But I submit to the court that if we look at the judgment of conviction for Mr. Davis, first of all, if you look at paragraph 47 of the PSR, it talks about the involvement of Mr. Davis, and it was two checks out of his one. Was the conduct of others ascribed to Mr. Davis? Your Honor, I don't know the answer to that question. I know that looking in Mr. Robinson's PSR, it essentially was. And I know that we do know this. We know that in Davis's judgment of conviction, he was given the full amount of restitution. So clearly, the amount of the full loss was. What case says that if somebody gets a different sentence from somebody else that we send it back? What's your best case on that? Well, Your Honor, I think I have to go back to the statute itself, 3553A. I don't have a specific case because I understand. We don't do that unless there's something really wrong. I mean, courts have different discretion to mete out sentences based upon the facts and based upon their view of the situation. Unless it's arbitrary and capricious or there's some bad faith on the part of the court, I just don't know that there's authority for us to do that. I see my time is up. May I answer this question? You may. Thank you very much, Your Honor. The answer is, the court said if there's something really wrong, and I would submit that in this case, to have the, really on that issue of the involvement of the defendants with regard to the number of victims, they were essentially the same, to give one defendant a lower guideline level. I would submit that that is really wrong in this case, Your Honor, and that's what 3553 is designed to protect. Thank you. All right. Thank you. We'll hear from you on rebuttal. Mr. Stern. May I please the court? Sam Stern with the United States. The district court in this case did not err in imposing the four-level enhancement, the number of loss and the amount of victims, based on the evidence in the record before it. If this were a classic hub-and-spoke conspiracy, Robinson would not have accomplished attribution. Is that correct? If this were a classic hub-and-spoke? Well, first of all, in the Kemp case, the Kemp case upheld the conviction in spite of the arguments made. No, I'm saying if this were a classic, that is, Jeffress dealt only with Robinson and Robinson didn't know of anybody, he knew there might be others, but he didn't know who they were, etc. If it was classic hub-and-spoke, would accomplice attribution fit? If the facts were different in this case and there was no connectors. My question is, if this were classic, I mean, this is just a theoretical question, if this were a classic hub-and-spoke, would accomplice attribution fit? Depending on the facts of that conspiracy, it might or it might not. And how would it not? Well, the court would have to undertake a 1B13 analysis and look at all the factors of the interplay between the co-defendants and determine whether the scope of the criminal conduct... Assume that there is no interplay of Robinson with anyone else. Then it would not be. Okay, so then... The only thing you have is them walking into the check-cashing facility together on two occasions. I don't agree, Your Honor. As you mentioned, the PSR and the United States Sentencing Memorandum indicated that the modus operandi of the conspiracy was that Mr. Jeffress would drive the co-defendants to the check-cashing stores and take them away while he waited outside. Furthermore, he knew of... Mr. Robinson knew Lynn's conduct involved in the exact same scheme he was involved with Mr. Jeffress. They committed the scheme in the same way. Where is the reference in the appendix to Robinson's knowledge of what Lynn did? First of all, it was stated by defense counsel at sentencing. He said that he knew that Mr. Lynn was one of the spokes. He refers to... Where's that? I had trouble kind of finding a crystal clear statement. You at A-29 or... You might want to look at A-31. A-31. Well, A-31 has the arm around part that is apparently not right. That's correct. Where do you pull from the sentencing transcript that Robinson knew what Lynn was doing? I'll read it to you. It's on page 828, section 8, page 8 of 828. And just to be clear, he refers to Mr. Davis, but a page later he corrects that in saying that he meant Lynn by Davis. But at the very beginning, I really don't know the relationship between and among the other spokes. But as to Mr. Robinson, he certainly knew, for instance, Mr. Davis, i.e. Mr. Lynn, I don't dispute, but that he was recruited by Mr. Jeffress and he answered Mr. Jeffress, et cetera. And furthermore, this is not something that was denied in any of the briefings. He knew he was recruited, and he didn't have any, if you will, conspiratorial interaction with him or any other individuals. That's correct. I'm only saying it's the purpose that he knew he was engaged in the same scheme that Mr. Robinson was engaged in. Clearly, he denies the interplay, which is at issue here today, but nonetheless, knowledge that he was engaged in the same scheme. Knowledge that someone else has been recruited is sufficient, you're saying? In and of itself, Your Honor. There's more here than simply just that. Okay. What more is there? As I mentioned, they're in the same store twice cashing checks. The inference, as you described before, is that they arrived together and left together as per the modus operandi of the conspiracy that Mr. Jeffress drove them, waited outside, and spirited them out. Furthermore, he also pled guilty to a conspiracy with others, plural, that the conspiracy engaged from May of 06 to August of 07. The plea colloquy, though, didn't reference anybody but Jeffress. And that's correct. I mean, it's just that the information said with others. If it was so important with Davis, why did Davis not receive the same enhancement that Robinson got? Well, Davis's plea, first off, was stipulated to certain enhancements. This plea with Mr. Robinson left those matters open for debate at sentencing. So the plea of Davis limited the enhancements? It stipulated to certain enhancements. The United States argued for more enhancements for Mr. Davis. That being said, as I said in my brief, these defendants are not similarly situated because of the things I've mentioned that relate Mr. Robinson and Mr. Lynn do not relate Mr. Robinson to Mr. Davis or Mr. Davis to others, for which conduct could be ascribed over 10 victims. If you have, turning to application note six, if you have Robinson dealing almost exclusively with Jeffress, even though he might be seen on location with others, and Robinson only profits from what he, Robinson, brings in, isn't that a case where we could look to application note six and say that the two-level enhancement here doesn't fit? I disagree with the application note in this case being helpful. In this case, they're very, very different. First of all... Well, application note six does talk about sharing of profits being a pretty important factor, is it not? It does. There's no sharing of profits here. Not in a direct fashion. That being said, Mr. Robinson has an interest in the enterprise continuing. If Mr. Jeffress were to be arrested and the enterprise were to be discontinued, his financial end of cashing checks would vanquish. So he has an interest in the ongoing nature of the enterprise. Further... Why would he? I mean, why, he just does it on his own with Jeffress and it doesn't make any difference what happens with anybody else. So he has, if Davis gets picked up, if Lynn gets picked up, it doesn't make any difference to Robinson. Mr. Robinson needs... Jeffress doesn't get picked up. And that's correct. But if Mr. Lynn gets arrested and Mr. Robinson goes, pardon me, if Mr. Jeffress goes down as a result of that, that will impact Mr. Robinson's ability to continue on in this enterprise. I understand. But I said, assuming that Jeffress isn't picked up, what makes a difference to Robinson if Lynn and Davis get picked up? In that respect, they're not sharing profits outside of the ongoing nature of the enterprise. They're not directly sharing between the two of them. That being said, application note six is fundamentally different also in the nature of the buyer-seller relationship as described. This is not a buyer-seller relationship as described, as brought up before. This is a common scheme back and forth. Robinson goes to Jeffress, they make the IDs, they go to the stores, they cash the checks, they divvy up the money, and they continue on and on and on. Were they seen inside the check cashing facility at the same time? Or was their presence staggered? Were they seen conversing with each other at any time? To be clear, as previously stated, they were not embracing in any way. That was corrected for the record. My understanding is they were in there within minutes of each other, cashing checks, and the inference by the PSR that the modus operandi would be that Mr. Jeffress would spirit them there and spirit them away, dividing up the money. It isn't a possible way to look at it. Application note six is meant to apply if you have someone who's a link in the chain. So that if one link disappears, the chain is broken. And that's application note six. That clearly fits. But if there's no link in the chain effect here, then why should there be an enhancement? In other words, as I said, it really doesn't make any difference if Lynn and Davis get picked up. But, Your Honor, that's not the narrow basis by which the court can assign relevant conduct in this case. Well, is the link in the chain versus not having a link in the chain, is that what application note six is about? Application note six is a demonstrative of showing whether the two people are there's an interdependence between them. And they say that if it's not, if they're not interdependent, then there is no relevant conduct. But there are many, many factors as per this court's case law. For example, in Glover, Judge Fuentes' opinion, where the two couriers traveled separately to a location, received drugs, traveled back separately, were spirited to the next point, and dropped off the drugs. There, there was no, quote, unquote, interdependence in the way in which you're describing. That being said, it was sufficient for the determination that it was a jointly undertaking conduct, that there was knowledge, there was presence together, it was a common scheme and a common plan. But then you have to show that it's within the scope of the defendant's agreement under Collado. And that's correct. And that agreement. Where was that? Where did the court address that this was within the scope of Robinson's agreement? The court did not make an explicit finding that it was. That being said. Don't you need to do that? I know, Your Honor, in Collado, for example, as you mentioned, and DeLiga, which I also cite, the court. DeLiga is very different. That's a telemarketer case. The guy had a huge, he had major interest in the companies that were part of the telemarketing scheme. But they're the same for the premise that I'm driving towards, which is that this court, even in the lack of an explicit finding by the judge as far as what the scope of the jointly undertaken activity was, can still view, can still make the determination from the record that it was implicitly there without having any further analysis. Collado says that DeLiga picks up on that. But all we have before us is a dry record. I don't see anything in the record that says that what Robinson did, the jointly undertaken activity was understood by Robinson to be within the scope of his agreement. The district court found that the agreement was to cash checks with Lynn and that them being in the same place together twice, going there and leaving there together, knowledge, common scheme, common plan, that was the scope of their agreement. And that was the infirm. The problem I'm having is that on A31, the only thing I could find in the record is there's a quote. It's on what is page 21 on A31 toward the latter part of the page there. I think by virtue of their presence together at the check cashing stores on a number of co-defendant Lynn, what all taken into consideration together makes it certainly appropriate to apply the enhancement. That's it. He said, and he said above, this gave him some reason to sit back and think as to whether it really fit here. But that's it. I don't have any more. The record in the case, however, is sufficient to establish that there was enough of the 1B1 between the two to show, in fact, that the scope of their agreement was to cash checks with each other. Now, the district court did, in fact, give this great thought. The PSR recommended that these- I don't know how great the thought was. It was minor. I think the thing that helps you is what's in line 13 or 14. In this particular case, he, Robinson, has pled guilty to participating with others to do this crime. And I would agree with that and also that the extent of the conspiracy from May of 06 to August of 07 is beginning far before his own conduct and ending far after his own conduct ends as far as the simple check cashing. So clearly, from the PSR and the evidence before the judge, the court was able to see that this was a far more expansive undertaking than just what Mr. Robinson argued that it was. And that was not clearly erroneous. Are you saying he should have corrected and said, I pled guilty with other rather than others? I mean, is that a crucial fact here? He could have said- I don't know if it's a crucial fact. It's certainly another thing that lends from the record to the judge's ability. But he very well could have amended the information to say, pled guilty- that conspired with Mr. Jeffers. It didn't have to be other. There are many other ways to do that. And the dates are also indicative of the issue. If there's any further- I have no further questions. Thank you. I'll submit on the briefs. And thank you very much. Thank you. Mr. Cohen? Thank you very much, Your Honors. May I please the court again? Mr. Cohen, you're familiar with the U.S. versus Alliance case? I'm not, Your Honor. Well, it's a Sixth Circuit case. And in that case, the Alliance cashed a number of checks to various banks as part of a conspiracy. He was given fraudulent identification and counterfeit checks to cash. He turned the money over to his recruiter, as Jeffers is in this case, and was paid for services. And the sentencing court considered the amount of the checks cashed by Alliance and those checks cashed by team members at the same time and location. It seems like it's a case that's squarely within our case here. Well, Your Honor, may I please the court again? It's unfair to ask you about it because you're not familiar with it. It's all fair, Your Honor. But I certainly can say that I don't know if Alliance is a new case. Because I was certainly looking to try and find factually similar cases. I would submit that there may be other factors in the Alliance case that perhaps weren't brought out in your analysis of what they did while they were on the ground, if you will, in the bank. I will acknowledge that there are certainly certain circumstances where Mr. Robinson and Mr. Lynn could have furthered their own ends if the record had them doing certain things, perhaps getting the attention of the clerk while on, you know, that kind of thing. What happened on the ground here seems to point more towards dependent conduct than independent conduct, or at least knowledge on the part of Robinson of what Lynn was doing. Your Honor, may I please the court? And that's where I think is the critical distinction, which is why I really wanted to come back on my rebuttal for three points. Number one, and I'll address that first then, is that the knowledge issue, and I think it was actually in my brief, in my original brief on page 15, the site that Nally, out of the Sixth Circuit, by the way, that said knowledge of the activity of others isn't sufficient to incorporate knowledge, to incorporate the responsibility for their, under 1B1.3. So knowledge of illegal activity. No, I think that was the case, and Nally, knowledge enough is not alone. I think you have to take that demonstrative step, and then if it will. Knowledge, conduct in the furtherance of the conspiracy. I would submit that that's correct, in the conspiracy within the bigger sense, that's correct, Your Honor, because there's no question that he took, Mr. Robinson took steps in furtherance of his conspiracy with Mr. Jeffers, but I would submit that, and it goes back to the point that Judge Ambrose made about the link in the chain, I would submit that that is really the essence here of this related conduct, and if I might. Did you say that Robinson was aware that Lynn's conduct was in the furtherance of the conspiracy? I think, well, the answer to that question is, it has to be yes. I mean, Mr. Robinson certainly knew what Mr. Lynn was doing, but there wasn't, they were operating, again, it's that they were operating independently, I would submit to the Court, and it gets back to, and if the Court would look at the other examples in Application Note 6, because there are other examples between P, after P, actually, where there are defendants that participate in some of the activities, but not all of them, and it's the activities that they knowingly participate in for which they will be attributed the relevant conduct, and they're mostly drug cases, in the examples given, and I would submit that the government pointed you back to the opinion in which you participated, the Glover opinion, having to do with the couriers, and that case, I submit also, is really factually distinct, because there, the couriers met, and I think it was in Arizona where they went, they met in Arizona, and split up their, and together, split up the drugs that they got, and came back separately. Well, they came back separately in that point, so as to arouse less suspicion, but they were working together from the point of their departure to the point of their terminus in Arizona, and when they came back, and then finally, because I see my time is running very short, I'd like to point out that the government said, with regard to the other issue on appeal, the government said that they asked for more level, higher levels, as to Davis, and they didn't get it, so that was why I submit that it was really wrong to apply it to Mr. Robinson. Thank you, Your Honors. Thank you. Take the case under advisement. Thank counsel very much. Call our third case.